CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 23 2017

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 7:14CR00047-01 |
| | ) | (Civil Action No. 7:15CV80877) |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| VESTEL MCKINLEY MOYER, | ) | |
| | ) | By: Hon. Glen E. Conrad |
| Defendant. | ) | Chief United States District Judge |

Vestel McKinley Moyer has moved to vacate, set aside, or correct his federal sentence under 28 U.S.C. § 2255. The government has filed a motion to dismiss, to which Moyer has responded, making the matter ripe for consideration. For the reasons that follow, the government's motion to dismiss will be granted and Moyer's motion to vacate will be denied.

### Background

Moyer was indicted by a federal grand jury on August 21, 2014. Count One of the indictment charged Moyer with possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). Count Two charged him with possession with intent to distribute a measurable quantity of a mixture or substance containing cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Count Three charged him with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

Moyer entered a plea of guilty to Count Two of the indictment on November 12, 2014. Under the terms of the written plea agreement, the parties stipulated, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, that Moyer would be sentenced to a term of imprisonment of 144 months. Moyer also agreed to waive his right to appeal his sentence, and his right to collaterally attack his conviction or sentence unless such attack is based on

ineffective assistance of counsel. In return, the government agreed to dismiss the remaining counts of the indictment.

During the guilty plea hearing, Moyer affirmed that he had received an adequate opportunity to read and discuss the plea agreement with his attorney, that he understood the plea agreement, and that no one had made any promises or representations regarding the disposition of the case other than those set forth in the plea agreement. Plea H'rg Tr. at 10, Docket No. 62. Moyer further affirmed that no one had attempted to coerce or compel him to plead guilty, and that he was pleading guilty because he was, in fact, guilty of the offenses with which he was charged. Id. at 10-11. Moyer also indicated that he understood the parties' agreement under Rule 11(c)(1)(C), and the fact that he would be sentenced to a term of imprisonment of 144 months if the court approved the agreement. Id. at 11. Likewise, Moyer affirmed that he understood the waiver provisions in the plea agreement. Id. at 12.

The court subsequently reviewed the constitutional rights that Moyer would waive if he pled guilty. Notwithstanding all of the valuable rights that he would waive by pleading guilty, and the fact that acceptance of the plea agreement would result in him being sentenced to a term of imprisonment of 144 months, Moyer indicated that he still wished to plead guilty. Id. at 27. The court then asked Moyer to explain what he had done that made him believe that he was guilty of the controlled substance offense charged in Count Two of the indictment. In response, Moyer advised the court that he "possessed a measurable quantity of cocaine," and that he "intended to distribute it or sell it." Id. at 28.

The court then called upon the Assistant United States Attorney ("AUSA") to offer evidence in support of the proposed plea of guilty. Proceeding by proffer, the AUSA summarized the government's evidence as follows:

2

Your Honor, the events leading to the indictment occurred on the 10th of July of this year in the City of Roanoke in the Western District of Virginia.

The case ensued from a search warrant that was conducted on Mr. Moyer's residence. Essentially, the police had had information that he was selling cocaine. They watched the residence, they had an informant that told them what was inside, and as they watched, they saw someone apparently do a transaction with Mr. Moyer, stopped that person, and indeed found cocaine. Based on that, they obtained a state search warrant and went inside.

Mr. Moyer's residence was a room, essentially, in a boardinghouse. He had a room in a larger structure, and the door to that room is controlled by a padlock on a hasp. It turns out that Mr. Moyer had the key to that padlock.

So the police went inside. In searching, they found 16 grams of what was determined to be cocaine powder, digital scales, baggies, also discovered a 9-millimeter pistol. There were a number of items indicating that, in fact, Mr. Moyer did live there, documents, medication, clothing, that sort of thing. They spoke to him briefly and he did admit that his DNA would have been on the gun. And this is Mr. Moyer.

Id. at 28-29. When asked if the summary of the evidence was consistent with Moyer's understanding as to what the government would have been able to prove if the case had gone to trial, Moyer responded in the affirmative. Id. at 30.

At the conclusion of the hearing, the court inquired as to whether Moyer was satisfied with the services that his attorney had rendered on his behalf. Moyer indicated that he was satisfied "with all the components" of his attorney's services in his case, that there was nothing that the court needed to know about the attorney's representation, and that he did not have any questions for his attorney or the court. Id. at 32-33. Accordingly, the court determined that Moyer was capable of making an informed plea, that he understood the nature and consequences of his plea, and that his plea of guilty was a knowing and voluntary plea supported by an independent basis in fact as to each of the essential elements of the controlled substance offense. Id. at 35.

In preparation for sentencing, a probation officer prepared a presentence investigation report ("PSR"), which designated Moyer as a career offender under § 4B1.1 of the United States Sentencing Guidelines. The career offender designation was based on prior convictions in the Circuit Court for the City of Roanoke for second degree murder and unlawful wounding. As a career offender, Moyer was subject to an enhanced range of imprisonment of 151 to 188 months under the Advisory Guidelines.

Moyer appeared for sentencing on February 9, 2015. The court adopted the presentence report and determined that Moyer qualified for the career offender designation. However, the court departed from the career offender range and imposed the 144-month term of imprisonment agreed upon by the parties under Rule 11(c)(1)(C). Moyer did not appeal his conviction or sentence.

On December 11, 2015, Moyer moved to vacate his sentence under 28 U.S.C. § 2255. The original motion, which was filed pro se, sets forth the following claims of ineffective assistance:

1. Defense counsel failed to move to dismiss the indictment after Moyer told him that he had been improperly detained for more than two hours.

2. Defense counsel allowed Moyer to be designated as a career offender, even though the designation may be unconstitutional under Johnson v. United States, 135 S. Ct. 2551 (2015), and was based on a conviction that was over 23 years old.

3. Defense counsel failed to move to suppress the cocaine powder discovered in Moyer's residence even though the search warrant affidavit referred to crack cocaine.

4. Defense counsel refused to interview Moyer's girlfriend even after Moyer asked him to do so several times.

5. Defense counsel allowed Moyer to sign a plea agreement that referred to "a measurable amount" of cocaine when "in fact only 16 grams were found at Moyer's house."

6.    Defense counsel did not subpoena the records of jailhouse phone conversations between Moyer and his girlfriend even though Moyer told him that his girlfriend admitted that the drugs and the firearm discovered in his residence belonged to her.

§ 2255 Motion, Docket No. 51.

On February 16, 2016, an Assistant Federal Public Defender filed an amended § 2255 motion on behalf of Moyer. The amended motion challenges Moyer's career offender designation under Johnson v. United States, 135 S. Ct. 2551 (2015).

On July 13, 2016, the court stayed consideration of Moyer's Johnson claim pending a decision by the United States Supreme Court in Beckles v. United States, 137 S. Ct. 886 (2017). The government subsequently moved to dismiss Moyer's remaining claims of ineffective assistance. The court notified Moyer of the government's motion, as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and gave him 21 days in which to file a response. After receiving a 90-day extension, Moyer responded to the government's motion on December 12, 2016. On March 6, 2017, the Supreme Court issued a decision in Beckles. Accordingly, the matter is ripe for adjudication.

## Discussion

Section 2255 sets forth four grounds on which a prisoner in federal custody may collaterally attack his sentence: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The petitioner bears the burden of proof by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

## I.     Claims of ineffective assistance

In the majority of his claims, Moyer seeks release from custody on the grounds of ineffective assistance of counsel. Claims of ineffective assistance are reviewed under the standard enunciated by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on an ineffective assistance claim under Strickland, a defendant must satisfy "two necessary components." Jones v. Clarke, 783 F.3d 987, 991 (4th Cir. 2015). First, the defendant "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Second, the defendant "must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. "Unless a defendant makes both showings, it cannot be said that [a] condition or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable." Id.

To demonstrate deficient performance under Strickland, the defendant must "show that counsel's representation fell below an objective standard of reasonableness" measured by "prevailing professional norms." Id. at 688. In assessing whether counsel's actions were unconstitutionally deficient, the court "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." Id.

To demonstrate prejudice under Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In the specific context of a guilty plea, a defendant can establish prejudice only by showing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v.

Lockhart, 474 U.S. 52, 59 (1985). This inquiry is objective: a defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

For the following reasons, the court concludes that Moyer's claims of ineffective assistance do not satisfy Strickland's stringent requirements.

### A.      Failure to seek dismissal of the indictment

Moyer first alleges that counsel erred in failing to move to dismiss the indictment after Moyer told him that he was detained for more than two hours prior to his arrest.  Although it is not entirely clear from Moyer's filings, it appears that Moyer was detained while law enforcement officers obtained a warrant to search his residence.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Even assuming that Moyer's detention prior to the issuance of a search warrant constituted an unreasonable seizure, he is unable to prove that counsel was ineffective in failing to move to dismiss the indictment on that ground.

"To determine whether evidence is inadmissible as a result of an illegal seizure, the court asks 'whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here." United States v. Fitzgerald, 416 F. App'x 238, 243 (4th Cir. 2011) (quoting Murray v. United States, 487 U.S. 533, 542 (1988)). "Evidence obtained by a search warrant is not admissible if the 'decision to seek the warrant was prompted by what [the police] had seen during [an] initial [unconstitutional] entry, or if information obtained during [an unconstitutional] entry was presented to the Magistrate and affected his decision to issue the warrant.'" Id. (alterations in original) (quoting Murray, 487 U.S. at 542).

In this case, there is no evidence that Moyer's seizure, or anything arising from it, influenced the magistrate's decision to issue the state search warrant authorizing law enforcement officers to search Moyer's residence. Instead, the record reveals that the search warrant application was based on events that transpired while Moyer's residence was under surveillance by law enforcement officers. The officers stopped an individual who had been observed engaging in an apparent drug transaction at Moyer's residence, and discovered cocaine in the vehicle in which the individual was travelling. The individual identified Moyer as his source of supply, and admitted that he had purchased the cocaine from Moyer. See Plea H'rg Tr. at 28-29; PSR at ¶ 4, Docket No. 34. In short, Moyer is unable to prove that the search warrant was "tainted by the [allegedly] illegal seizure." Fitzgerald, 416 F. App'x at 243.

Moreover, even if law enforcement officers violated Moyer's rights under the Fourth Amendment, he would not have been entitled to dismissal of the indictment. See United States v. Morrison, 449 U.S. 361, 366 (1981) ("[W]e have not suggested that searches and seizures contrary to the Fourth Amendment warrant dismissal of the indictment. The remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgression."); United States v. Rodriguez, 948 F.2d 914, 916 (5th Cir. 1991) ("The remedy for any Fourth Amendment violation is . . . exclusion of evidence rather than dismissal of the indictment altogether."). Accordingly, because there was no basis for Moyer's counsel to move to dismiss the indictment, Moyer cannot establish that counsel's performance was deficient or that it prejudiced his defense.

**B.**     **Failure to object to Moyer's career offender designation**

Moyer next alleges that his attorney was ineffective in failing to object to his designation as a career offender under the Sentencing Guidelines. Moyer emphasizes that his attorney

"allowed the U.S. government to use a predicate[] conviction that may be unconstitutional and was over 23 years old . . . and didn't even file a motion arguing the use of the conviction." § 2255 Mot. at 5 (citing Johnson, supra).

Section § 4B1.1 of the Sentencing Guidelines provides that a defendant is a career offender if, among other factors, the defendant has at least two prior felony convictions for crimes of violence or controlled substance offenses. See U.S.S.G. § 4B1.1(a). This requirement is satisfied where "(1) the defendant has previously sustained at least two felony convictions of either a crime of violence or a controlled substance offense; and (2) the sentences for at least two of the aforementioned felony convictions are counted separately." United States v. Davis, 720 F.3d 215, 217 (4th Cir. 2013) (internal quotation marks omitted) (citing U.S.S.G. § 4B1.2(c)).

At the time that Moyer was sentenced, the Guidelines defined a "crime of violence" as:

any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1)     has as an element the use, attempted use, or threatened use of physical force against the person of another ["the force clause"], or

(2)     is burglary of a dwelling, arson, or extortion, involves use of explosives ["the enumerated crimes clause"], or otherwise involves conduct that presents a serious potential risk of physical injury to another ["the residual clause"].

U.S.S.G. § 4B1.2(a) (2014). The Guidelines further provided that a prior sentence is counted as long as it was imposed "within fifteen years of the defendant's commencement of the instant offense," or "resulted in the defendant being incarcerated during any part of such fifteen-year period." U.S.S.G. § 4A1.2(e)(1).

In the PSR, the Probation Office recommended that Moyer be classified as a career offender based, in part, on a 1992 conviction for second degree murder for which Moyer was

sentenced to an active term of imprisonment of 20 years. Moyer appears to argue that his prior conviction for second degree murder was not a countable offense due to the age of the conviction and the grounds later recognized in Johnson, and that counsel's failure to challenge the designation reflected ineffective assistance. For the following reasons, however, the court is unable to agree.

First, Moyer's sentence for the murder conviction exceeded one year and one month, and resulted in him being incarcerated during the fifteen-year period preceding the commencement of the controlled substance offense. Accordingly, the sentence for that conviction was properly counted toward Moyer's criminal history points, and his attorney did not provide ineffective assistance by failing to argue to the contrary. See id.; see also Sharpe v. Bell, 593 F.3d 372, 383 (4th Cir. 2010) (observing that counsel is not required to make futile arguments).

Likewise, Moyer's reliance on Johnson is unavailing. Johnson invalidated the residual clause of the Armed Career Criminal Act ("ACCA") as unconstitutionally vague under the Due Process Clause of the Fifth Amendment. Johnson, 135 S. Ct. at 2653. Although the residual clause in Johnson was identical to that of the career offender guideline in effect at the time of Moyer's sentencing, the Supreme Court has since held that the Guidelines "are not subject to a vagueness challenge under the Due Process Clause" and that "[t]he residual clause in § 4B1.2 (a)(2) therefore is not void for vagueness." Beckles, 137 S. Ct. 886, 892 (2017). "Despite Johnson, then, the residual clause of the career offender guideline remains valid." United States v. Riley, 2017 U.S. App. LEXIS 8225, at *5 (4th Cir. May 9, 2017). Accordingly, Moyer cannot establish that his attorney's failure to object to his career offender designation was objectively unreasonable or prejudicial.

## C.    Failure to File a Motion to Suppress

Moyer also claims that his attorney erred in failing to move to suppress the cocaine powder discovered in his residence. Moyer emphasizes that the affidavit provided in support of the state search warrant incorrectly indicated that the person stopped by law enforcement officers upon leaving Moyer's residence was found to be in possession of "crack cocaine" rather than cocaine powder. Based on the discrepancy as to the nature of the cocaine, Moyer believes that his attorney should have filed a motion to suppress.

The court agrees with the government that this claim is also without merit. In Franks v. Delaware, 438 U.S. 154 (1978), "the Supreme Court developed a two-prong test clarifying what a criminal defendant must show when challenging the veracity of statements made in an affidavit supporting a search warrant." United States v. Lull, 824 F.3d 109, 114 (4th Cir. 2016). Specifically, a defendant must show: (1) that "the warrant affidavit contained a 'deliberate falsehood' or statement made with 'reckless disregard for the truth'"; and (2) that "without the allegedly false statement, the warrant affidavit is not sufficient to support a finding of probable cause." United States v. Fisher, 711 F.3d 460, 468 (4th Cir. 2013) (quoting Franks, 438 U.S. at 155-56, 71).

In this case, there is no indication that the challenged statement contained in the search warrant affidavit was intentionally or recklessly false, rather than merely negligent. Nor is there any indication that the particular type of cocaine identified in the affidavit was material to the magistrate's finding of probable cause. Both crack and powder cocaine are illegal under state and federal law, and the discovery of either kind would have provided probable cause to search the residence from which the substance was procured. Accordingly, Moyer is unable to establish that his attorney was ineffective in failing to file a motion to suppress.

**D.** **Failure to interview Moyer's girlfriend or subpoena the records of his phone conversations with her**

Moyer next asserts that his attorney erred in refusing to interview his girlfriend, Danica Stone. Moyer claims that his girlfriend admitted to a Roanoke City police officer that the drugs and firearm discovered in Moyer's residence belonged to her. Moyer also claims that Stone made the same admissions during jailhouse phone calls with him, and that his attorney erred in failing to subpoena the phone records.

In response to Moyer's motion, the government has provided a copy of the transcript from Stone's grand jury testimony, which was provided to Moyer's attorney prior to his guilty plea hearing. Stone testified under oath that Moyer was selling drugs out of his room in the boardinghouse, that he kept a pistol in his room, and that the pistol did not belong to her. In light of Stone's sworn testimony, Moyer's counsel decided not to interview Stone or subpoena the phone records, since counsel was of the opinion that the alleged statements "would not be helpful" to Moyer's case." Wilson Affid. ¶ 1, Docket No. 72-4.

Moyer has failed to establish that his attorney's performance in this regard was deficient or prejudicial, as required by Strickland. Based on Stone's sworn testimony before the grand jury and the other evidence against Moyer, counsel's decision not to interview Stone or obtain the jailhouse phone records was objectively reasonable. Moreover, Moyer does not allege that, but for counsel's failure to interview Stone, he would have proceeded to trial. Nor has he shown that such a decision "would have been rational under the circumstances," given the evidence against him and the amount of time he would have faced if convicted at trial. Padilla, 559 U.S. at 372.

Additionally, during the guilty plea hearing, Moyer admitted, under oath, that he "possessed a measurable quantity of cocaine," and that he "intended to distribute it or sell it." Rule 11 H'rg Tr. at 28. Accordingly, Moyer cannot successfully claim, in a § 2255 motion, that counsel should have challenged the government's evidence against him. Absent extraordinary circumstances, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005). For all of these reasons, Moyer has no viable claim of ineffective assistance based on counsel's failure to interview his girlfriend or subpoena the records of their phone conversations.

### E.    Failure to include a specific quantity of cocaine in the plea agreement

Moyer was charged with and pled guilty to possession with intent to distribute a "measurable quantity" of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Plea Agreement at 1. Moyer now claims that his attorney erred in allowing him to sign a plea agreement that refers to a "measurable" amount, since "only 16 grams were found at Moyer's house." § 2255 Mot. at 9.

As the government explains in its response to Moyer's motion, § 841(b)(1)(C) governs the sentence for a defendant convicted of trafficking in a measurable quantity of cocaine that is less than the quantities for which a higher range of punishment is prescribed in § 841(b)(1)(A) or (B). Sixteen grams of cocaine is, in fact, such a measurable quantity. Accordingly, counsel did not act unreasonably in allowing Moyer to sign a plea agreement that utilized that particular term. Moreover, because Moyer's guideline sentencing range was based on his status as a career offender, rather than the amount of cocaine for which he was held responsible, counsel's failure

to include a specific quantity in the plea agreement did not prejudice Moyer. Accordingly, this claim also fails under Strickland.

## II.  **Claim under Johnson**

Finally, in the amended § 2255 motion filed by counsel, Moyer challenges the constitutionality of his career offender designation based on the Supreme Court's decision in Johnson v. United States, which declared the residual clause of the Armed Career Criminal Act unconstitutionally vague. Johnson, 135 S. Ct. at 2563. For the reasons previously explained, this claim is foreclosed by the Supreme Court's decision in Beckles, in which the Court concluded that that the Sentencing Guidelines, including the career offender provision, "are not subject to a vagueness challenge under the Due Process Clause." Beckles, 137 S. Ct. at 892. Accordingly, Moyer has no viable claim under Johnson.

### Conclusion

For the reasons stated, the court will grant the government's motion to dismiss and deny Moyer's § 2255 motion. Additionally, because Moyer has failed to make a substantial showing of the denial of a constitutional right, the court will deny a certificate of appealability. See 28 U.S.C. § 2253(c).

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the defendant and all counsel of record.

DATED: This 23rd day of May, 2017.

_____
Chief United States District Judge